52 CCPA

**Application of Anthony J. CIVITELLO.
Patent Appeal No. 7230.**

United States Court of Customs
and Patent Appeals.

Dec. 17, 1964.

Mason, Porter, Diller & Stewart, Charles J. Diller, Washington, D. C. (Vincent L. Ramik, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals insofar as it rejected claims 2, 9, and 10 of application serial No. 797,970, filed March 9, 1959, for "Square Bottom Bag." Some claims have been allowed and no appeal was taken on claim 7, which was also rejected.

The rejection of the appealed claims was on the ground that they are unpatentable over the following references:

| Haslacher | 2,377,005 | May 29, 1945 |
| Craig | 2,600,487 | June 17, 1952 |

The only issue is obviousness in view of the prior art under 35 U.S.C. § 103.

The invention is a bottom construction and blank assembly for a two-ply paper bag having an oil and grease proof liner

---

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief

Judge Worley, pursuant to provisions of Section 294(d), Title 28, United States Code.

which makes the bag suitable for packaging oil-containing or greasy foods such as cookies. The bag is also said to be sift-proof and air-tight and thus suitable for coffee, insecticides, and the like.

Bags of the type here involved have a liner suitably impervious to grease, such as a glassine paper, and an outer ply or wrapper of ordinary paper which may be printed, serving as the external package display. The main purpose of the invention is to provide a bag, capable of being made on existing bag-making machinery, in which the liner is so formed and related to the wrapper as to protect the latter from any oil or grease from the bag contents getting into it for the obvious reasons that it would spoil the appearance of the package, soften up the wrapper and possibly cause it to let go in its bottom seams. The invention further contemplates the use of an all-glued construction as distinguished from prior art lined bags in which the liner is heat sealed, gluing being said to permit faster processing than heat sealing.

Of the appealed claims, claim 2 is directed to a bag. Claims 9 and 10 are directed to a "blank assembly" consisting of the blank which forms the liner and the blank which forms the wrapper, the only difference between the last two claims being that claim 10 says the two blanks are secured together marginally with adhesive. Many, but not all, of the limitations of claim 2 describing the walls, slits, tabs, flaps, and folds and their interrelationships which exist in the completed bag are recited in claims 9 and 10 but claim 2, being more complete, is the most limited of the three appealed claims. We do not set it forth here as it would be meaningless in the absence of a drawing, which would also be meaningless in the absence of a description. Instead, we will state our understanding of the feature relied on for patentability which we find set forth in claim 2.

We first note that both references disclose lined bags, Craig being one with a pasted or glued construction and Haslacher being of the heat-sealed liner type. Appellant's bag, being made by similar production methods from continuous webs with slitting, plying, tubing, unit separating, and folding techniques common to the art, has many things in common with the prior art. The principal admittedly novel feature is the formation of a flap *on the liner* at the end of one of the bag walls which overlies and *extends somewhat beyond* the corresponding bottom flap on the wrapper, *the end of the liner flap being folded around the edge of the wrapper flap* to keep it out of contact with the bag contents. The flaps at the opposite side of the bag are then folded, in forming the bag bottom, so that the liner flap is stuck directly to the folded edge of the first-mentioned liner flap. This is described in claim 2 in this language:

> " * * * the projecting bottom portion of one of said inner tube flaps being reversely folded over the bottom edge of an associated one of said outer tube flaps, * * * 'the projecting bottom portion of the other of said inner tube flaps overlying said reversely folded bottom portion * * * and all interior portions of the bag bottom are formed by said inner tube."

The inner "tube" is, of course, the liner of grease-proof material.

We fully agree with the following statements in appellant's brief about the Craig reference:

> "The bag is provided with a specific bottom construction which attempts to provide for a sift-proof bag, but does not provide a grease-proof bag wherein the liner forms a complete bottom seal exclusive of the wrapper.

> * * * * * *

> "In this patent there is no disclosure or suggestion of a bottom edge of the liner 11 projecting beyond the bottom edge of the wrapper 10. There is also no disclosure of *reversely folding* a projecting bottom portion of the inner tube flap *over the bottom edge of the outer*

*tube flap* or overlaying a projecting bottom portion of another inner tube flap upon the reversely folded bottom portion of the one inner tube flap, *which features constitute appellant's invention.* There is also an absence in this patent of a disclosure in which an inner tube is sealed to itself exclusively of an outer tube, and outer tube flaps which are protected entirely by the inner tube." [Our emphasis.]

In fact, Craig, which shows little more than a lined bag (designed for packaging carbon black) shows a construction having the very feature appellant wishes to avoid, paper wrapper edges in direct communication with the interior of the bag where they could absorb grease or the like exuding from the contents.

The Patent Office Solicitor's brief has very little to say about Craig. In fact it starts its argument with the statement, "Haslacher is the more important reference here * * *." The examiner's rejection, found by the board to be correct, was "unpatentable over Craig in view of Haslacher."

Haslacher has a heat-sealed liner and shows a variety of bottom formations, but not appellant's. The attitude of the board was that Haslacher would make it obvious to modify the Craig bag in such fashion as to arrive at appellant's construction. To do this, however, it is first necessary to modify Haslacher. As above pointed out, the claim feature relied on involves the wrapping of a liner flap end around a wrapper edge and this is the one thing Haslacher does not do. While he does seal the liner to itself and achieve the appellant's objective of keeping all parts of the wrapper out of contact with the contents of the bag, he does not do it with appellant's *structure* or in an all-glued bag.

■ Since Haslacher fails to *disclose* the feature of the claim relied on, we do not agree with the Patent Office that it would *suggest* modifying the Craig bag to contain that feature. The Patent Office finds the suggestion only after making a modification which is not suggested, as we see it, by anything other than appellant's own disclosure. This is hindsight reconstruction. It does not establish obviousness. We therefore find claim 2 allowable over the references applied.

### Claims 9 and 10

These claims are on a different footing. They do not contain the limitation of claim 2 which we have been discussing. They are directed to the "blank assembly." That assembly contains features which go to make *possible* the structure of claim 2 but they would not necessarily result in it.

The feature of these claims on which appellant relies for patentability is that the bottom edge of the inner tube-forming *blank* (liner) is disposed, in the assembly claimed, beyond the bottom edge of the outer tube-forming blank (wrapper). What this means is that the *edges* of the blanks which are transverse to the webs are separately formed before the webs are superposed to make the assemblies and when they are superposed one blank has its entire *edge* shifted longitudinally ahead of the other.

■ While the specification shows the longitudinally shifted *relationship* of the two blanks, it does not tell how to achieve it, from which we would deduce that those skilled in the art would know how to do it. We are confirmed in this belief by appellant's brief which supplies the information that "only if this Honorable Court fully understands certain basic bag fabricating fundamentals which are customarily followed in the bag manufacturing industry" will it be able to understand "Appellant's novel invention and its contribution to the bag manufacturing industry * * *." We are next told what we are not told by the specification:

"The wrapper blank 3 and the liner blank 4 are originally in the form of webs which are fed in a *conventional* manner and are subjected to a contour slitting and perforating operation. Suitable mechanisms individually slit the wrapper

and line webs longitudinally but *merely perforate* the webs transversely to *define* a line of separation between adjacent blanks. The webs, *while still joined* by the transverse lines of perforations, *are superimposed and adhesively joined to form* a plurality of *blank assemblies* connected by the transverse line of perforations. The blank assemblies are formed into a tube and the tube is passed through rollers operating at differential [sic] speeds. A more advanced pair of rollers rotate faster than another set of rollers to create a tension in the tube causing it to separate along the lines of perforations. Thereafter, each separated tube is folded to form a square bottom construction." [Our emphasis.]

Under the circumstances, we must take this to be knowledge available to those of ordinary skill in the bag-making art.

Disclosure in Haslacher is relied on which appellant admits "teaches the extension of inner tube *flaps* beyond the bottom edges of the outer tube *flaps* * * *." (Our emphasis.) He argues, however, that "appellant is claiming the extension of inner tube flaps beyond the bottom edge of an outer tube *blank*." This rather tenuous difference comes down to the method employed to produce the inner tube flap extension. Haslacher does it by die-cutting portions out of his wrapper web, which appellant says is a waste of material, which it is in minor degree. Appellant does it by cutting the extensions for the bottom of one bag from the end of an adjacent blank which forms the top of a bag, pointing out that the thus utilized material is not needed on the top edge anyway. This is done by giving the necessary shape to the transverse line of perforations which are, in effect, the transverse line of severance. Of necessity, if webs are employed to form the "blank assemblies," as the specification would indicate, this is done before the webs are superposed and joined. Then whether the liner flaps extend over and beyond the ends of the wrapper flaps is merely a matter of adjusting the relationship of the two webs when they are superposed, so that one blank leads the other by the desired amount.

Based for the most part on appellant's own statements as to what was conventional in this art at the time of his invention, we are of the opinion that appellant's way of obtaining the desired marginal overhang and consequently the claimed blank assembly would have been obvious to one of ordinary skill. This was the board's view and we agree with it.

■■ Appellant points out that the only difference between rejected claim 10 and allowed claim 11 is in a limitation added to claim 11 which is to be found in the prior art; wherefore, appellant argues, rejection of claim 10 reflects on the validity of claim 11. We cannot agree. While the added limitation is to be found in Craig, it has a special significance in claim 11 when read with the other recitations of the claim which clearly serves to distinguish the claim—"the subject matter as a whole," in the words of section 103—from the art of record, more specifically from Haslacher, Craig being distinguished from by other limitations. One element in a combination claim, though an old element, may serve to distinguish from the art by making a new combination and the same is true of the recitation of this old feature when taken in conjunction with the other recited features.

The decision of the board is reversed as to claim 2 and affirmed as to claims 9 and 10.

Modified.